**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| BEATRICE O. HINOJOSA, | § | |
| LOUIS E. MOTAL | § | |
| | § | |
|     Plaintiffs, | § | |
| | § | |
| vs. | § | C.A. NO. C-06-159 |
| | § | |
| GUIDANT CORPORATION, et al, | § | |
| | § | |
|     Defendants. | § | |

**ORDER OF REMAND**

On this day came on to be considered Plaintiffs' Motion to Remand the above-styled action for lack of subject matter jurisdiction. (D.E. 5.)  For the reasons discussed below, the Motion to Remand is GRANTED and the above-styled action is REMANDED pursuant to 28 U.S.C. § 1447(c) to the 94th Judicial District Court of Nueces County, Texas, where it was originally filed and assigned Cause Number 05-3377-C.

**I.   BACKGROUND**

On July 5, 2005, Plaintiff Louis Motal filed suit in Texas state court against Defendants Cardiac Pacemakers, Inc., Guidant Corporation, Guidant Sales Corporation, and Guidant Puerto Rico Sales Corporation (collectively, "Defendants").  On July 21, 2005, Plaintiff Beatrice Hinojosa filed a nearly-identical lawsuit against these same four Defendants, also in state court.  Both Plaintiffs alleged a litany of state law causes of action against the Defendants, including: civil conspiracy, battery, breach of

1

fiduciary duty, products liability, breach of express and implied warranties, fraud, constructive fraud, negligence, and intentional infliction of emotional distress.  Both Plaintiffs' claims arise out of the design, manufacture, marketing, and sale of the Ventak Prizm 2 Model 1861 Implantable Cardioverter Defibrillator ("ICD"), a surgically implanted electronic device used to monitor and stabilize heart rhythms.  Plaintiffs alleged that they had the ICD implanted and suffered injuries as a result.

On August 5 and 11, 2005, Defendants removed these cases to this Court.  Defendants alleged that removal was proper because the Court had diversity jurisdiction over the cases pursuant to 28 U.S.C. § 1332.  This Court, however, found jurisdiction lacking and subsequently remanded the cases because Defendant Guidant Puerto Rico Sales Corporation ("GPRSC") was a Texas citizen and thus was not diverse from the Plaintiffs.  The Court rejected Defendants' argument that GPRSC had been improperly joined.

On December 21, 2005, following remand, the two cases were consolidated in the 94th Judicial District of Nueces County, Texas and assigned Cause Number 05-3377-C.  The consolidated case proceeded in state court until Plaintiffs filed a "Motion for Summary Judgment and Response to All Motions for Summary Judgment."  Defendants then removed the case again, based on this document, alleging both federal question and diversity jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332.  On April 6, 2006, Plaintiffs filed a

2

motion to remand the case.  (D.E. 5.)  That same day, Defendants
filed a response in opposition to Plaintiffs' motion.  (D.E. 10.)

## II.  DISCUSSION

"The Fifth Circuit recognizes a defendant's right to seek
subsequent removals after remand." S.W.S. Erectors, Inc. v. Infax,
Inc., 72 F.3d 489, 492 (5th Cir. 1996) (citing Browning v. Navarro,
743 F.2d 1069, 1079-80 n.29 (5th Cir. 1984)).  Thus, a defendant
may twice remove an action from state court to federal court, so
long as the federal court possesses subject matter jurisdiction
over the action.  See 28 U.S.C. § 1441(a).  A court, however, "must
presume that a suit lies outside its limited jurisdiction, and the
burden of establishing federal jurisdiction rests on the party
seeking the federal forum." Howery v. Allstate Ins. Co., 243 F.3d
912, 916 (5th Cir. 2001); see also Manguno v. Prudential Prop. &
Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002).  In evaluating
jurisdiction, "[a]ny ambiguities are construed against removal
because the removal statute should be strictly construed in favor
of remand." Manguno, 276 F.3d at 723; see also Acuna v. Brown &
Root, Inc., 200 F.3d 335, 339 (5th Cir. 2000) ("[D]oubts regarding
whether removal jurisdiction is proper should be resolved against
federal jurisdiction").

### A.  Federal Question Jurisdiction

#### 1.  The Well-Pleaded Complaint Rule

Defendants first claim that this Court has federal question

jurisdiction over this case because Plaintiffs' summary judgment
motion and response required "the state court judge to construe
federal law and apply it to Defendants' conduct."  (Notice of
Removal at ¶ 14.)

A federal district court has subject matter jurisdiction over
"all civil actions arising under the Constitution, laws, or
treaties of the United States."  28 U.S.C. § 1331.  Generally, the
determination of whether a court has federal question jurisdiction
is resolved by application of the "well-pleaded complaint" rule.
Merrell Dow Pharmaceuticals v. Thompson, 478 U.S. 804, 808 (1986);
Hart v. Bayer Corp., 199 F.3d 239, 243 (5th Cir. 2000).  This rule:

> provides that the plaintiff's properly pleaded complaint
> governs the jurisdictional inquiry.  If, on its face, the
> plaintiff's complaint raises no issue of federal law,
> federal question jurisdiction is lacking.

Hart, 199 F.3d at 243 (citing Franchise Tax Bd. v. Laborers
Vacation Trust, 463 U.S. 1, 10 (1983)).  "The plaintiff is thus the
master of her complaint."  Carpenter v. Wichita Falls Independent
School Dist., 44 F.3d 362, 366 (5th Cir. 1995).  Where a plaintiff
has a choice between federal and state law claims, she "may elect
to proceed in state court on the exclusive basis of state law, thus
defeating the defendant's opportunity to remove, but taking the
risk that his federal claims will one day be precluded."  Id.

A defendant cannot establish federal question jurisdiction
merely by showing that federal law will "apply" to a case or that
there is a "federal issue" in the plaintiff's state law cause of

4

action.  Id.; see also Thompson, 478 U.S. at 813.  Similarly, it is insufficient for a defendant to show that there is a federal *defense* to a plaintiff's state law claims.  Carpenter, 44 F.3d at 366.  Rather, federal jurisdiction is sustainable only if the defendant "shows that (1) a federal right is an essential element of [the plaintiff's] state claim, (2) interpretation of the federal right is necessary to resolve the case, and (3) the question of federal law is substantial."  Howery, 243 F.3d at 918.

Defendants have failed to establish the existence of federal question jurisdiction in this case.  In their state court petitions, Plaintiffs clearly elected to proceed in state court on the exclusive basis of state law.  Plaintiffs' petitions read:

> plaintiff expressly disclaims any federal causes of action, choosing to rely only on state law causes of action which are not inconsistent with the Pre-Market Approval, the regulatory process, or the terms or conditions of Pre-Market Approval.  All claims asserted herein seek to establish . . . that Defendants failed to comply in one or more respects with duties to Plaintiff under Texas law as established by Defendants' failure to meet federal standards and violations of federal regulations and procedures. See Medtronic v. Lohr, 518 U.S. 470 (1996).

(Pls.' Sec. Am. Pets. at ¶ 10.)  Thus, under the well-pleaded complaint rule, there is no federal question jurisdiction.

Similarly, Plaintiffs' references in their motion for summary judgment to the Medical Device Amendments ("MDA") to Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 et seq, are insufficient to confer federal question jurisdiction.  Read in conjunction with

5

their complaints, it is clear that Plaintiffs' summary judgment motion did not invoke federal law in order to state a federal claim.  Rather, Plaintiffs' "mention of federal law merely served to describe types of conduct that violated [state law, and] not to allege a separate cause of action" under federal law.  Howery, 243 F.3d 912.  It is well-settled that the mere incorporation of a federal standard of conduct into a state law cause of action cannot alone support federal question jurisdiction.  See, e.g., Id. at 915, 917-18 (a plaintiff's claim that the defendants violated Federal Trade Commission rules and regulations was not sufficient to confer federal jurisdiction where the federal violations merely described the conduct that violated Texas law); Thompson, 478 U.S. at 805-06 (plaintiffs' claim that a drug was "misbranded in violation of the Federal Food, Drug, and Cosmetic Act" was not sufficient to confer federal jurisdiction where the misbranding was used to establish negligence *per se* under Ohio law).

This is especially true where the federal law at issue does not provide for a "private, federal cause of action for the violation" of the statute at issue.  Thompson, 478 U.S. at 817; see also Griffis v. Gulf Coast Pre-Stress Co., Inc., 850 F.2d 1090, 1092 (5th Cir. 1988).  The Supreme Court has held that, allowing a defendant to remove a case involving a federal issue where Congress has not provided for a federal cause of action, would "flout, or at least undermine" congressional intent.  Thompson, 478 U.S. at 812.

It is well-settled that the MDA and FDCA do not provide for a private, federal cause of action. See, e.g., Strong v. Telectronics Pacing Systems, Inc., 78 F.3d 256, 260 (6th Cir. 1996) (MDA does not create a private, federal cause of action); In re Orthopedic Bone Screw Products Liability Litigation, 193 F.3d 781, 788 (3d Cir. 1999) (same); PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1113 (2d cir. 1997) (no private right of action exists under the FDCA); Goodlin v. Medtronic, Inc., 167 F.3d 1367, 1379 (11th Cir. 1999) (the "MDA provides no federal means by which injured plaintiffs can pursue legal remedies against the manufacturers of defective medical devices"); Medtronic, Inc. v. Lohr, 518 U.S. 470, 487 (1996) (plurality opinion) ("there is no explicit private cause of action against manufacturers contained in the MDA, and no suggestion that the Act created an implied private right of action"). Therefore, the Defendants may not remove this case based on the mere presence in the case of a federal issue under the MDA and FDCA.

Finally, Defendants fail all the prongs of the Howery test for federal question jurisdiction. First, a finding that Defendants have violated federal law, or that the ICD is an "unapproved device," is not itself an element of Plaintiffs' state law claims. Howery, 243 F.3d at 918. Second, because federal law is not an essential element of Plaintiffs' claims, "interpretation of a federal right is not necessary to this case." Id. Finally, the

federal issue in this case is not "substantial" because Plaintiffs'
numerous state law causes of action overwhelm the single federal
issue of whether the ICD is an approved device under federal law.
Id. at 919.   Furthermore, the fact that Congress determined there
should be no private federal remedy for violation of the MDA "is
tantamount to a congressional conclusion that the presence of the
statute as an element of a state cause of action is insufficiently
'substantial' to confer federal question jurisdiction."   See
Thompson, 478 U.S. at 814.   Therefore, this Court lacks federal
question jurisdiction over this case.

### 2.   Complete Preemption Exception

Even where a plaintiff's complaint does not invoke federal
law, a federal court may still have jurisdiction if the defendant
can show that federal law "completely preempts" the field of state
law.   Hart, 199 F.3d at 244.   If complete preemption is found, a
plaintiff's facially state law claims will be "recharacterized" as
a federal cause of action.   Id. (citing Caterpillar, Inc. v.
Williams, 482 U.S. 386, 393 (1987)).   "Federal preemption is
ordinarily a federal *defense* to the plaintiff's suit," and not an
authorization of removal to federal court.   Metropolitan Life Ins.
Co. v. Taylor, 481 U.S. 58, 63 (1987) (emphasis supplied).
Complete preemption, however, is a narrow exception to the normal
rules for evaluating jurisdiction.   Absent "extraordinary
circumstances, the well-pleaded complaint rule governs."

<u>Carpenter</u>, 44 F.3d at 367 (citing <u>Franchise Tax Bd. v. Laborers</u>
<u>Vacation Trust</u>, 463 U.S. 1, 10 (1983)).

In order to establish complete preemption, it is not enough
for the defendant to show that federal law provides a defense to
the application of state law. <u>Hart</u>, 199 F.3d at 244. Rather, "the
defendant must demonstrate that Congress intended not just to
preempt a state law to some degree, but to altogether *substitute* a
federal cause of action for a state cause of action." <u>Id</u>.
(emphasis supplied); <u>see also Carpenter</u>, 44 F.3d at 366 (stating
that Congress must "so forcibly and completely displace state law
that the plaintiff's cause of action is either wholly federal or
nothing at all"). The Fifth Circuit will not find complete
preemption of "state law unless the statute (1) contains a civil
enforcement provision, (2) includes a specific grant of federal
subject matter jurisdiction, and (3) reflects a clear manifestation
of congressional intent to make preempted state-law claims
removable to federal court." <u>Rio Grande Underwriters, Inc. v.</u>
<u>Pitts Farms, Inc.</u>, 276 F.3d 683, 686 (5th Cir. 2001) (citing <u>Hart</u>,
199 F.3d at 245-46). The Supreme Court has found only two federal
statutes to have such a broad preemptive scope: § 301 of the Labor
Management Relations Act, and § 502(a)(1)(B) of the Employee
Retirement Income and Security Act. <u>See Avco v. Aero Lodge No.</u>,
735, 390 U.S. 557 (1968); <u>Metropolitan Life</u>, 481 U.S. at 66.

In this case, Defendants contend that 21 U.S.C. § 360k(a) of

the MDA completely displaces Plaintiffs' state law claims.  That section provides that:

> no State . . . may establish or continue in effect with respect to a device intended for human use any requirement–
>
>> (1)  which is different from, or in addition to, any requirement applicable under this chapter to the device, and
>>
>> (2)  which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a).  As interpreted by federal regulations, state requirements are preempted:

> only when the Food and Drug Administration has established specific counterpart regulations or there are other specific requirements applicable to a particular device under the act, thereby making any existing divergent State or local requirements applicable to the device different from, or in addition to, the specific Food and Drug Administration requirements.  There are other State or local requirements that affect devices that are not preempted by section 521(a) of the act because they are not 'requirements applicable to a device' within the meaning of section 521(a) of the act.

21 C.F.R. § 808.1(d).

Defendants' complete preemption argument, however, is unpersuasive because all Defendants have shown is that MDA § 360(k) may provide a *defense* to some, perhaps many, of Plaintiffs' state law causes of action.  See, e.g., Martin v. Medtronic, Inc., 254 F.3d 573 (5th Cir. 2001) (MDA preemption a defense to claims against a pacemaker manufacturer for failure to warn and defective design); Gomez v. St. Jude Medical Daig Division, Inc., — F.3d —,

2006 WL 620785 (5th Cir. March 14, 2006) (MDA preemption a defense to most claims against a medical device manufacturer except for a product defect claim that the device was not manufactured in accordance with FDA-approved specifications).

The complete preemption exception, however, requires a much greater showing.  This is because removal and preemption are two distinct concepts and "[t]he fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted . . . does not establish that they are removable to federal court." Caterpillar Inc. v. Williams, 482 U.S. 386, 397(1987); see also Warner v. Ford Motor Co., 46 F.3d 531, 535 (6th Cir. 1995).  In order for preemption to make a plaintiff's claims removable, there must be some evidence that Congress intended to *substitute* a federal cause of action for the preempted state actions.  Hart, 199 F.3d at 244.

In this case, Defendant has presented this Court with no such evidence of congressional intent to substitute a federal cause of action for Plaintiffs' state action.  In particular, the Defendant has failed to show that the MDA contains a civil enforcement provision.  In fact, as noted above, it is well-established that the MDA does *not* allow for private suits.  See, e.g., Bone Screw, 193 F.3d at 788; Goodlin, 167 F.3d at 1379.  Similarly, Defendants have failed to show that the MDA contains a specific grant of federal subject matter jurisdiction or a clear intent to make preempted state-law claims removable to federal court.  See Strong,

11

78 F.3d at 261 (stating that the MDA provides only federal administrative remedies and does not evince a clear intent to create removal jurisdiction). Therefore, Defendants have failed to meet their burden of showing that the complete preemption exception should apply to this case.

**B.  Diversity Jurisdiction**

Alternatively, Defendants argue that the Court has diversity jurisdiction over this case because the only non-diverse Defendant, GPRSC, has been improperly joined. This Court, however, has already addressed this exact issue in its previous orders remanding the case. See Hinojosa v. Guidant Corp., et al, 05-cv-399 (D.E. 15); Motal v. Guidant Corp., et al, 05-cv-390 (D.E. 26). In those orders, this Court rejected Defendants' improper joinder argument and concluded that Plaintiffs had stated a claim against GPRSC for civil conspiracy. See Smallwood v. Illinois Cent. R. Co., 385 F.3d 568, 573 (5th Cir. 2004) (en banc) (stating that "[o]rdinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder"). Defendants have presented no new reason why Plaintiffs cannot state a civil conspiracy claim against GPRSC.

Rather, Defendants' only argument in favor of diversity jurisdiction is that this Court should look beyond whether Plaintiffs have stated a claim, and into the *evidence* supporting that claim. In particular, Defendants argue that this Court should examine the discovery in the case and conclude that "Plaintiffs

have no evidence to support their claims" against GPRSC. (Not. of Rem. at ¶¶ 19-21.) This Court, however, declines Defendants' invitation to delve into the evidentiary merits of the case. Although a district court has discretion to determine the procedure for addressing claims of fraudulent joinder, the Fifth Circuit, sitting *en banc*, has determined that a summary, or evidentiary, inquiry "is appropriate *only* to identify the presence of *discrete and undisputed* facts that would preclude plaintiff's recovery against the in-state defendant." <u>Smallwood</u>, 385 F.3d at 573-74 (emphasis supplied). This is not a case where a discrete and undisputed fact might preclude Plaintiffs' claim against GPRSC. Therefore, this Court is limited to the allegations of Plaintiffs' complaints, which state a claim against GPRSC. GPRSC has not been improperly joined and, accordingly, removal based on diversity jurisdiction is improper.

### C.   Timeliness and Waiver

Because this Court has determined it does not have subject matter jurisdiction over this case, it is unnecessary to address Plaintiffs' arguments that removal was untimely and that Defendants waived their right to remove the case.

### III. CONCLUSION

For the reasons discussed above, Plaintiffs' Motion to Remand is GRANTED and the above-styled action is REMANDED pursuant to 28 U.S.C. § 1447(c) to the 94th Judicial District Court of Nueces

County, Texas, where it was originally filed and assigned Cause Number 05-3377-C.

SIGNED and ENTERED this 7th day of April, 2006.

_____
Janis Graham Jack
United States District Judge

14